Burton, J.,
delivered the opinion of the court.
Complainant and his nephew, one Alexander Kin-kannon were soldiers in the Confederate Army. Kin-kannon was without a horse, and Daniel Smith, the ■intestate of respondents having a horse which Kin-kannon desired to obtain, the complainant Dillon stated to Smith that Kinkannon was destitute and would have no means of payment except what he would receive for his services as a soldier. Smith, then said; “Let him take the horse along at $120 and you (Dillon) just pay me the money when he (Kinkannon) draws it for his services.” The complainant says in his bill, that he assented to this proposition; that it was further agreed between him and Smith that a note should be drawn up in pursuance of the terms of their agreement, and thereupon Smith delivered the horse to Kinkannon. The complainant further alleges that sometime in November, 1861, (the note having not before been executed) Smith met him in the road, and presented a note *597 already drawn up and requested complainant to sign it, stating that the note was drawn in accordance with their previous agreement. Complainant further alleges that he signed the note without reading it, trusting to the representations of Smith, but has since ascertained that the note did not contain the stipulations agreed upon, but was a 'promissory note, in ordinary form, dated November 8, 1861, and payable twelve months thereafter. He further shows that on June 10, 1871, the respondents as administrators of Daniel Smith, obtained judgment against him for the principal of the note and $61.81 the interest accrued and costs. From this judgment complainant appealed to the Circuit Court of Hardin county, and pending the appeal, he filed this bill of injunction.
Several propositions are maintained in this bill, and more fully in the argument here, as entitling the complainant to at least partial relief against this judgment.
1. It is assumed that complainant was not by virtue of the agreement alone set out as principal debtor, but that he was the guarantor or surety of Kinkannon in the purchase of a horse. We do not think this is so on complainant’s own showing in the bill.
We do not think that Kinkannon contracted any debt to Smith to which complainant’s engagement was collateral, but complainant was to pay the money when Kinkannon drew it for his services. It is very plain that the contract was made by complainant, and exclusive credit given tc him, and if the money was, *598 by the terms of the verbal agreement, to be paid out of Kinkannon’s pay as a soldier, it would still be the debt of the complainant if he • directly promised to pay out of that fund. It is argued for complainant that the note should be reformed so as to conform with the parol stipulation. If there was any proof on which we could grant this relief, we do not see how it could avail complainant, for he alleges in his bill that Kinkannon drew his pay and furnished him (complainant) with the money to pay the note, which he tendered to Smith. This occurred in 1862. How, according to complainant’s own showing, his engagement to pay became absolute when Kinkannon drew his pay, and certainly it did become so when he was furnished with funds to pay it,
2. It is next insisted in the bill that the note was payable in Confederate money. We simpty remark on this part of the bill that its allegations are self-contradictory. Complainant says that he does not remember that Confederate money was mentioned specifically in the contract, nor does he remember whether any of it was in circulation or even issued at that time, and yet, in the next sentence, he says that the contract was made with a view exclusively to that kind of currency, and was so understood and intended by both him and Smith at the time and after making the contract. It is plain that there was no.t and could not have been any agreement when the horse was bought that he was to be paid for in Confederate money This is the mere inference of complainant, from the fact that the Con *599 federate government paid its soldiers in that kind of currency.
3. The tender of the money in 1862 did not discharge complainant’s debt, nor did it stop the interest u})on it.
The complainant did not plead this tender, when sued before the magistrate, nor has he paid into court or offered to pay into court, the sum justly due.
In cur view of this case, as has been already intimated, this complainant is entitled to no relief whatever, and his bill should have been dismissed. The Chancellor, however, made a decree more favorable to him than he was entitled to; in that he held him liable for the value of $120 Confederate Treasury notes in United States currency when the note matured, on November 8, 1862. The complainant appealed from the decree, which the Chancellor allowed him to do, before the account was taken.
The decree of the Chancellor is modified so far as ' it orders an account.
The bill is dismissed and judgment will be entered here against the complainant and his surety on the injunction .bond for the amount of the judgment, and interest, and against the complainant and his sureties on the cost bond for all the costs of the cause.